IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| GLENN CASEY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner, )<br>Social Security Administration, )<br>    Defendant. ) | Civil Action No. 4:14cv00004<br><br><br><br>By:    Joel C. Hoppe<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION**

    Plaintiff Glenn Casey asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–422, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence and should be affirmed.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5)

2

whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

II. Procedural History

Casey protectively filed for DIB and SSI on November 16, 2010. *See* Administrative Record ("R.") 88, 96. He was 44 years old, *id.*, and had worked most recently in the construction industry, R. 270. Casey alleged disability beginning August 8, 2001, because of a piece of metal in his lung; osteoarthritis in his knees, lower back, and elbows; and a curved thoracic spine. *See* R. 88, 96. The state agency twice denied Casey's applications in early 2011. R. 87, 95, 103, 110. Both of the state-agency physicians who reviewed Casey's applications concluded that he did not have a severe medically determinable impairment. R. 93, 100, 108, 115.

Casey appeared with counsel at a hearing before ALJ R. Neely Owen on November 22, 2011. *See* R. 12, 61–85. At the hearing, Casey's attorney amended his alleged disability onset date to March 31, 2005, the date Casey was last insured for DIB. *See* R. 12, 67. Counsel also asked the ALJ to order a consultative mental exam because Casey's recently discovered school records showed that he had been enrolled in special-education classes and had failed out of eighth grade at age 16. *See* R. 67. ALJ Owen informed Casey that he would order consultative mental and physical exams before he issued his written decision. *See* R. 82, 84–85. Casey underwent a mental exam with Dr. Deborah Bremer, Psy.D., on January 4, 2012, and a physical exam with Dr. Virginia Grady, M.D., on January 11, 2012. *See* R. 449, 459.

Casey appeared with counsel at another hearing before ALJ Owen on September 13, 2012. *See* R. 12, 31–60. He testified as to his alleged impairments and the limitations those

3

impairments caused in his daily activities. *See* R. 38–43. A vocational expert ("VE") also testified as to Casey's ability to return to his past work or to perform other work existing in the national and regional economies. *See* R. 46–59.

ALJ Owen denied Casey's applications in a written decision dated September 28, 2012. R. 25. He found that Casey suffered from "severe" discogenic/degenerative back disorder, major depressive disorder, generalized anxiety disorder, and borderline IQ, R. 14, but that these impairments were not presumptively disabling, R. 15–17. The ALJ next determined that Casey had the residual functional capacity ("RFC") to perform "a limited range of light work."[1] R. 17. Specifically, he found that Casey could lift at most ten pounds; walk, stand, and sit for "four hours each in an eight-hour workday"; and "perform all domains of manipulation frequently and all domains of postural activity occasionally"; but never work at unprotected heights or climb ladders or scaffolds. R. 17. He also found that Casey could understand, remember, and execute simple instructions; interact appropriately with supervisors, coworkers, and the general public; and respond to routine changes in the workplace. R. 17, 22.

The ALJ noted that Casey's physical RFC ruled out returning to his past relevant work in the construction, manufacturing, and farming industries. *See* R. 23. Finally, relying on the VE's

---

[1] "RFC" is a claimant's maximum ability to work "on a regular and continuing basis" despite his or her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the claimant's record and must reflect the "total limiting effects" of the claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945.

"Light work" involves lifting no more than twenty pounds at a time, but frequently lifting or carrying objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet those weight-lifting requirements can perform light work only if he or she also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999). A person who can do light work "can also do sedentary work, unless there are additional limiting factors such as [a] loss of fine dexterity or [an] inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Sedentary work" involves lifting no more than ten pounds at a time and occasionally lifting or carrying objects like docket files, ledgers, or small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a).

testimony and the *Dictionary of Occupational Titles*, the ALJ concluded that Casey was not disabled after March 31, 2005, because he could perform other jobs available nationally and in Virginia, such as production inspector, garment presser, or hand packer. *See* R. 24–25. The Appeals Council declined to review that decision, R. 1, and this appeal followed.

III. Discussion

Casey makes two arguments on appeal. *See* Pl. Br. 17–19, 19–21, ECF No. 15. First, he argues that substantial evidence does not support the ALJ's mental RFC determination because the ALJ erroneously discredited Dr. Bremer's medical opinions. *See id.* at 17–19. Second, he argues that the Commissioner did not carry her burden at step five because the VE's testimony that Casey could perform certain "light" occupations conflicts with the ALJ's "less than light" RFC. *See id.* at 20–21. Casey also suggests that the ALJ's hypothetical question did not fairly set out all of his functional limitations. *See id.* at 18–19, 20.

A.   *Medical Opinions*

ALJs must weigh each "medical opinion" in the claimant's record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are statements from "acceptable medical sources," such as physicians, that reflect judgments about the nature and severity of the claimant's impairment, including his symptoms, diagnosis and prognosis, functional limitations, and remaining capabilities. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations classify medical opinions by their source: those from treating sources and those from non-treating sources, such as examining psychologists and state-agency medical reviewers. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

5

Opinions from non-treating sources are not entitled to any particular weight.[2] *See id.* Rather, the ALJ must consider certain factors in determining what weight to give such opinions, including the source's familiarity with the claimant, the weight of the evidence supporting the opinion, and the opinion's consistency with other evidence in the record. *See id.* The ALJ must explain the weight given to all medical opinions and the reasons for that weight. *See Radford v. Colvin*, 734 F.3d 288, 295–96 (4th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). If the ALJ's RFC assessment conflicts with a medical opinion, he also must explain why that opinion was not adopted in full. *Harder v. Comm'r of Soc. Sec.*, No. 6:12cv69, 2014 WL 534020, at *4 (W.D. Va. Feb. 10, 2014) (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

   1.   *The Medical Evidence & Opinions*

Dr. Bremer, a clinical psychologist, interviewed Casey during a consultative mental exam on January 4, 2012. *See* R. 449–58. She asked Casey "some questions" from the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"), but she did not administer a full-scale standardized intelligence test. *See* R. 16, 453–54. Dr. Bremer noted that Casey's poor performance on the WAIS-IV questions suggested "borderline to low average abstract thinking abilities," "borderline or lower" intelligence, "impaired" expressive vocabulary, and below-average math skills. Specifically, she observed that Casey had trouble counting by sevens, spelling "world" backwards, remembering three words after a short delay, and doing simple math problems in his head. R. 453. Dr. Bremer also diagnosed Casey with single-episode major depressive disorder, moderate-to-severe generalized anxiety disorder, and bereavement. *Id.*

---

[2] A treating-source medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). There are no treating-source medical opinions regarding Casey's mental impairments in the record.

6

Dr. Bremer filled out a form describing Casey's current ability to perform certain "work-related activities on a sustained basis" during a normal workweek. *See* R. 456–57. She opined that Casey was at most mildly limited in his ability to understand, remember, and execute simple instructions; make simple work-related decisions; interact appropriately with supervisors, coworkers, and the general public; and respond appropriately to usual work situations and changes in a routine work setting.[3] R. 456–57. She also opined that Casey was markedly limited in his ability to understand, remember, and execute complex instructions; and make complex work-related decisions.[4] *Id.* Dr. Bremer explained that these limitations were based on Casey's poor "responses to items taken" from the WAIS-IV's verbal, math, and general-fund-of-information subtests. R. 456.

Dr. Bremer also included a narrative summary of her findings and opinions in a separate report completed the same day. *See* R. 449–54. She explained that Casey

> could do simple repetitive tasks but not detailed or complex tasks. He could maintain regular attendance, and his ability to perform work activities on a consistent basis would not be good because his pace and concentration are somewhat impaired. He could not complete a normal, stressful, competitive workweek without decompensation from his depression at the current time. He probably could accomplish this if he had effective antidepressant medication. . . . He would accept instructions from a supervisor and interact appropriately with the public and coworkers.

---

[3] Mildly limited means that the person "can generally function well" in this area despite "a slight limitation." R. 456. Dr. Bremer opined that Casey had "mild" limitations executing simple instructions and making simple work-related decisions. *Id.* He had no limitations understanding and remembering simple instructions; interacting appropriately with supervisors, coworkers, and the general public; or responding to usual work situations and changes in a routine work setting. R. 456–57.

[4] Markedly limited means a "substantial loss in the ability to effectively function" in this area. R. 456. Dr. Bremer did not identify any particular functional area in which Casey had more-than-marked limitations. *See* R. 456–57; *but see* R. 454 ("The claimant has marked to severe limitations in his ability to perform substantial, gainful employment.").

7

> In summary, [Casey] has marked to severe limitations in his ability to perform substantial, gainful employment. His problems include poor concentration and pace. His adaptation to stress is not good at the current time because of his depression which leads to fatigue and impaired concentration. This would affect his ability to keep schedules and complete tasks. His interaction with bosses and peers would be appropriate.

R. 454. Elsewhere in her report, Dr. Bremer opined that Casey was "independent, appropriate and effective in his daily work habits and functioning." R. 452.

2. *The ALJ's Findings*

The ALJ gave Dr. Bremer's opinions "partial weight" in determining Casey's RFC. *See* R. 21–22. He rejected Dr. Bremer's narrative opinions about Casey's "poor" or "impaired" memory, concentration, persistence, and pace because they were inconsistent with her "specific quantifiable" opinions that Casey could make simple work-related decisions; understand, remember, and execute simple instructions; and function appropriately in a normal work setting. R. 22. The ALJ also found that Dr. Bremer's opinion that Casey could not manage his own finances or maintain substantial gainful employment conflicted with Casey's self-reported abilities and daily activities. *See id.*

3. *Analysis*

Casey argues that the ALJ "irrationally discredited" the only available medical opinion about his mental abilities. Pl. Br. 17. I disagree. This is not a case where the ALJ, "[i]n the absence of any psychiatric or psychological evidence to support his position," impermissibly substituted his judgment for Dr. Bremer's opinions. *Fields v. Astrue*, No. 2:09cv24, 2010 WL 723690, at *26 (W.D. Va. Feb. 26, 2010) (quoting *Grimmet v. Heckler*, 607 F. Supp. 502, 503 (S.D. W.Va. 1985)). The ALJ accepted Dr. Bremer's opinions that Casey can understand, remember, and execute simple instructions; interact appropriately with supervisors, coworkers, and the general public; make simple work-related decisions; and respond appropriately to

changes in a routine work setting "on a sustained basis" during a normal workweek. *See* R. 17, 22, 456–57. He rejected the parts of Dr. Bremer's narrative that were inconsistent with this "quantifiable assessment" or with Casey's self-reported abilities and activities. *See* R. 22, 51. These are legitimate factors to consider when weighing an examining source's medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.967(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 787 n.7 (N.D. W. Va. 2009) ("[O]pinions by medical doctors which are internally inconsistent or inconsistent with other evidence of record are entitled to little or no weight."); *cf. Chestnut v. Colvin*, No. 4:13cv8, 2014 WL 2967914, at *4 (W.D. Va. June 30, 2014) (Kiser, J.) ("[T]he ALJ may properly discount the opinion of a treating physician when it is inconsistent with a claimant's daily activities.").

Substantial evidence supports the ALJ's finding that Dr. Bremer's opinions are internally inconsistent. For example, Dr. Bremer's opinion that Casey responds poorly to normal stress and "could not complete a normal, stressful, competitive workweek," R. 454, conflicts with her opinion that Casey's mental impairments did not affect his ability, during a normal competitive workweek, to "respond appropriately to usual work situations and to changes in routine work setting," R. 457. Dr. Bremer's opinion that Casey can "do simple repetitive tasks" and "is independent, appropriate[,] and effective in his daily work habits and functioning," reasonably conflicts with her opinion that Casey's "ability to perform work activities on a consistent basis would not be good because his pace and concentration are somewhat impaired." R. 452, 454. It was up to the ALJ to weigh this conflicting evidence and to determine which of Dr. Bremer's opinions were more persuasive. *See Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *3–4 (W.D. Va. Sept. 12, 2014) (Kiser, J.). Unfortunately for Casey, ALJ Owen sided—fairly and

9

Case 4:14-cv-00004-JLK-JCH   Document 18   Filed 03/12/15   Page 9 of 16   Pageid#: 556

consistently with the law—against Dr. Bremer's work-preclusive narrative and in favor of her work-permissive RFC assessment. *Id.*

Substantial evidence also supports the ALJ's finding that parts of Dr. Bremer's narrative conflicted with Casey's self-reported abilities and activities. For example, Casey first reported having a mental impairment in November 2011, one year after he applied for benefits. R. 22; *see also* R. 248–52. In December 2010, Casey reported that he could pay bills, count change, handle a savings account, and use a checkbook, and that his regular activities included grocery shopping and playing Monopoly. R. 246, 249. He later testified that he could follow oral instructions well enough to obtain a commercial driver's license. R. 70. And, while Casey's education is limited, R. 307–09, he worked consistently for 18 years before his last employer went out of business, *see* R. 229, 237, 258–71, 272–73, 460. The VE testified that some of Casey's past jobs involved "semi-skilled" work, R. 46, which generally requires close attention to detail or the ability to concentrate on moderately "complex" tasks, 20 C.F.R. §§ 404.1568(b), 416.968(b). Casey has provided no evidence suggesting that he experienced a decrease in intellectual functional ability from the time that he was employed. Nor has he said that his mental impairments forced him to stop working. *See* R. 237, 400, 452, 460.

The other, albeit limited, medical evidence in the record does not suggest that Casey has disabling mental impairments. On November 11, 2011, during Casey's initial appointment to establish primary care, Dr. John Clayton Allen, M.D., interviewed Casey about any history of mental problems. R. 428. Casey said he usually feels "OK," but experienced periods of sadness that occasionally progressed to thoughts of suicide. *Id.* He also occasionally experienced visual and auditory hallucinations. *Id.* Dr. Allen noted that Casey had a depressed mood and flat affect, but was not anxious. R. 429. He prescribed Effexor and noted that if it was not effective in

10

controlling Casey's depression, he would prescribe an antipsychotic. R. 430. He also recommended that Casey contact the local community service board to establish counseling services. *Id.* Casey did not seek the recommended counseling, and the record contains no other medical records of substance concerning his mental health. This longitudinal evidence reasonably conflicts with Dr. Bremer's opinion—provided after one clinical interview—that Casey "has marked to severe limitations" performing substantial, gainful employment because of his "poor" or "impaired" concentration and pace, R. 454. *Cf. Johnson*, 434 F.3d at 653 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.").

Casey does not point to any evidence that arguably entitles Dr. Bremer's work-preclusive narrative to more weight than her work-permissive RFC assessment. He simply disagrees with the ALJ's choice between conflicting evidence. *See* Pl. Br. 17–18. This Court cannot second-guess that choice where the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for discrediting an examining source's medical opinion. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (finding no error where the ALJ did the same when rejecting in full a treating-source medical opinion). Given the evidence discussed above, I find that the ALJ's decision to give Dr. Bremer's opinions partial weight is supported by substantial evidence.

B.    *Casey's Ability to Work*

A claimant's RFC is the most he can do on a regular and continuing basis despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). "It is an administrative assessment made by the Commissioner based on all the relevant evidence in the [claimant's] record," including objective medical evidence, medical-source opinions, and the claimant's own statements. *Felton-*

11

*Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam); *accord* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC must reflect the combined limiting effects of impairments "supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints." *Carter v. Astrue*, No. 3:10cv510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011), *adopted by* 2011 WL 2693392 (July 11, 2011); *accord* 20 C.F.R. §§ 404.1545(e), 416.945(e).

The ALJ found that Casey could lift at most ten pounds; walk, stand, and sit for "four hours each in an eight-hour workday"; and "perform all domains of manipulation frequently and all domains of postural activity occasionally"; but never work at unprotected heights or climb ladders or scaffolds. R. 17. This RFC is supported by substantial evidence in the record, including Dr. Grady's identical RFC assessment, "relatively benign" physical exams and objective medical findings during the relevant period, and Casey's own reports that he can lift up to twenty pounds. *See, e.g.*, R. 372–73, 374, 376–83, 400–01, 428–30, 444 (physical exams and diagnostic studies); R. 40, 251 (Casey's statements); R. 462–63 (Dr. Grady's RFC assessment). Casey does not challenge the ALJ's determination of his physical RFC. *See* Pl. Br. 21.

The ALJ also found that Casey could understand, remember, and execute simple instructions; interact appropriately with supervisors, coworkers, and the general public; make simple work-related decisions; and respond appropriately to changes in a routine work setting. *See* R. 17, 22, 24. This RFC is supported by substantial evidence in the record, including the portions of Dr. Bremer's RFC assessment that the ALJ credited, Casey's limited education, and his credited complaints. *See* R. 16–18, 21, 23, 307–09, 456–57. Other than challenging the ALJ's decision to partially discount Dr. Bremer's opinion, Casey does not challenge the ALJ's mental RFC determination.

Casey argues that the Commissioner did not carry her burden at step five because the ALJ's hypothetical question was flawed and the VE's testimony conflicts with the ALJ's RFC determination. *See* Pl. Br. 20–21. Once the ALJ found that Casey could not perform his past relevant work, R. 23, the burden shifted to the Commissioner to prove that Casey could perform other work existing in the national or regional economies. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). A VE's reliable testimony in response to a proper hypothetical question is substantial evidence that supports the Commissioner's final decision. *Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002). A proper hypothetical question includes the claimant's age, education, work history, and an adequate description of "what [he] can and cannot do." *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006).

The ALJ asked the VE to consider a person matching Casey's age, education, and work history who could perform the physical functions that Dr. Grady identified in her RFC assessment and the "specific quantifiable" mental functions that Dr. Bremer identified in her RFC assessment.[5] *See* R. 49–50, 52. The VE explained that Dr. Bremer's RFC was for "simple, unskilled work," and that Dr. Grady's RFC was for something "between sedentary and light" work because Casey couldn't lift more than ten pounds, but he could stand and walk each for four hours in an eight-hour day. R. 50. According to the VE, this hypothetical person could perform three "light, unskilled" occupations: (1) production inspector, with 6,700 jobs in Virginia and 360,000 jobs nationally; (2) hand packer, with 4,800 jobs in Virginia and 301,000

---

[5] The ALJ fully incorporated each doctor's functional assessment into his final RFC. *Compare* R. 17, 22, *with* R. 456–57, 462–63. Casey argues in passing the ALJ should have asked the VE about the more severe restrictions Dr. Bremer identified in her narrative. *See* Pl. Br. 19. The ALJ did not need to ask about those restrictions because he reasonably decided not to include them in Casey's RFC. *See Fisher*, 181 F. App'x at 365 ("Because the ALJ's [RFC] determination is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error.").

13

jobs nationally; and (3) garment presser, with 1,200 jobs in Virginia and 44,200 jobs nationally. R. 54. Casey argues that there is an unexplained conflict between the VE's testimony that he can perform these "light" occupations and the ALJ's "less than light" RFC and that the VE never considered his limited ability to sit, stand, and walk. Pl. Br. 21. Casey's arguments are meritless.

The ALJ's hypothetical question adequately reflected his RFC determination. *See Fisher*, 181 F. App'x at 365. The VE also cited Dr. Grady's four-hour standing and walking restrictions when explaining why her RFC assessment was "somewhere between light and sedentary, depending on the particular job." R. 50. Clearly, the VE considered Casey's limited ability to sit, stand, and walk in concluding that he could perform certain "light" jobs. *See* R. 49–50, 54.

The ALJ also asked the VE whether the hypothetical person could perform these "light" occupations even if he couldn't lift more than ten pounds, which is less weight than light work demands. R. 55. The VE testified that he could, but that the number of positions available would "be reduced by 15 to 30 percent."[6] *Id.* Then, just to make sure, the ALJ asked the VE whether those reduced numbers took "into account [the] limitation of lifting no more than ten pounds." R. 55. The VE said that they did. *Id.* The ALJ properly characterized Casey's functional ability as a reduced range of light work, considering that he could lift ten pounds and sit, stand, and walk for four hours each. *See Reynolds v. Astrue*, Civil No. SKG-11-559, 2012 WL 1107649, at *20 (D. Md. Mar. 30, 2012) (noting that the Fourth and Sixth Circuits have upheld RFC classifications to limited range of light work based on lifting restrictions of 10 to 12 pounds). Whether the VE

---

[6] Those percentages still leave a "significant" number of hand-packer and garment-presser jobs available in the national and regional economies. *See* R. 24; *Chestnut*, 2014 WL 2967914, at *2 n.4, *10 & n.16 (one occupation with 26,609 jobs available nationally and 920 jobs available regionally); *Carr v. Comm'r of Soc. Sec.*, No. 4:10cv25, 2011 WL 1791647, at *10 (W.D. Va. May 11, 2011) (Kiser, J.) (two occupations with 2,000 jobs available regionally).

described these jobs as "light" or "less than light" hardly matters in this case. *See id.* at *21–22 (collecting cases finding the same). What matters is that the ALJ asked the VE to consider all of Casey's functional abilities and limitations and the VE, based on his unchallenged expertise, opined that Casey still can perform specific, available jobs. *See id.*; *see also Walls*, 296 F.3d at 292 (holding that a VE's reliable testimony is substantial evidence to support the Commissioner's final decision). Accordingly, the ALJ's determination that Casey can perform other work in the economy is supported by substantial evidence.

IV. Conclusion

This Court must affirm the Commissioner's final decision that Casey is not disabled if that decision is consistent with the law and supported by substantial evidence in the record. The Commissioner has met both requirements. Accordingly, I recommend that the Court **DENY** Casey's motion for summary judgment, ECF No. 14, **GRANT** the Commissioner's motion for summary judgment, ECF No. 17, and **DISMISS** this case from the docket.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

15

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

>ENTER: March 12, 2015
>
>*Joel C. Hoppe*
>
>Joel C. Hoppe
>United States Magistrate Judge